(11 Misc. Rep. 422.)

## HESS v. VAN AUKEN.

(Common Pleas of New York City and County, General Term. February 4, 1895.)

1. ACCIDENT INSURANCE—VOLUNTARY EXPOSURE TO DANGER.

The insured, who was cashier of a bank, called at a sawmill to have some lumber cut for a cabinet to be used in the bank. While standing near a saw he stepped on a block, which was concealed in the sawdust on the floor, and instinctively threw out his arm to recover himself. His hand came in contact with the saw, and was cut off. *Held*, that the insured, in entering the sawmill, was acting within the scope of his employment, and it would not be held, as a matter of law, that he voluntarily exposed himself to danger, though shortly before the accident he had been operating the saw himself.

2. EVIDENCE—ADMISSIONS—OFFER OF COMPROMISE.

Evidence of the admission of an independent fact is competent, though made during a negotiation tending towards a compromise.

Appeal from Eighth district court.

Action by Loyd B. Hess against D. J. Van Auken on an accident insurance policy. From a judgment entered on a verdict in favor of plaintiff, defendant appeals. Affirmed.

Argued before BOOKSTAVER and BISCHOFF, JJ.

Charles Schurz Petrasch, for appellant.

Seth B. Robinson, for respondent.

BOOKSTAVER, J. This action is founded on an accident insurance policy, to recover from one of a hundred individual underwriters the proportionate share of his liability thereunder. The plaintiff, the cashier of a bank, called at a sawmill for the purpose of having some lumber cut the requisite lengths for a cabinet to be used in the bank. While waiting for the work to be done, he asked an employé to have a cut-off saw started. This saw protruded through a movable table upon which the lumber or blocks of wood to be cut were laid. When in operation, the highest point in the circumference of the saw was about two inches above the table, and was operated by pushing the saw table away from the operator and towards the saw. When the operator stopped pushing, the table came back automatically to its original position. Plaintiff sawed off a board twice, and then stopped. This was about 6 o'clock in the evening of September 29th, and twilight was coming on in the mill. After plaintiff had finished cutting the blocks, he stood by the side of the table (whether leaning against it or not, he could not definitely say), watching the workmen; and, while turning or moving around, he stepped upon a block of wood lying concealed in the sawdust on the floor, and instinctively threw out his arm to recover his balance. His hand came in contact with the saw, and was cut off at the wrist. This occurred some five or ten minutes after plaintiff had stopped using the saw.

We are not able to say, as matter of law, on the facts before us, that plaintiff voluntarily exposed himself to unnecessary danger. He was acting within the scope of his employment, ordering material for a cabinet to be used for a particular purpose by the bank. He was not injured while operating the saw, but his injury was primarily caused by his slipping or stumbling upon a concealed block of wood while waiting for his order to be filled. The refusal to direct a verdict for defendant was therefore proper.

Appellant excepted to the refusal of the court to charge that, if plaintiff's injuries happened in consequence of voluntary exposure to unnecessary danger, the verdict must be for the defendant. The policy contained the usual clause that no claim should be made if an injury resulted from voluntary exposure to unnecessary danger, hazard, etc. The courts have applied this provision to various cases, but appellant seems to have lost sight of the fact that respondent is seeking to recover upon an accident policy. His contention appears to be that plaintiff walked into the mill, and cut off his hand. If the provision in question is extended to meet this contention of the insurance companies, a recovery for injuries would be impossible, for the primary object of a policy of the kind under consideration is to provide against an accidental injury arising from a danger-

more or less apparent. While the request was, in the abstract, correct in law, I think it was sufficiently covered by the charge as made, which was to the effect that if the injuries were unintentional, and did not happen in consequence of voluntary exposure, the plaintiff could recover, otherwise not. Phillips v. Railroad Co., 127 N. Y. 657, 27 N. E. 978. This portion of the charge does not appear to be altogether clear, from the stenographer's minutes, but we think that it was sufficiently explicit to instruct the jury correctly on that point.

The request to charge that "if you find that the plaintiff was injured while operating a buzz saw or cut-off saw," and also, "if you find that the operation of the cut-off saw was the approximate cause of his injury, your verdict must be for the defendant," were properly refused, as such requests suppose a state of facts not presented by the evidence. Plaintiff was not operating the saw, and the fact that he had been doing so some five or ten minutes previous to the accident can have no bearing upon the case, except as a fact going to show the circumstances surrounding the accident.

Appellant also contends that the admission in evidence of the offers of compromise, under his objection, was error. The law is well settled that evidence of the admission of an independent fact is admissible, although made during a negotiation tending towards a compromise. 1 Greenl. Ev. (10th Ed.) § 192, and authorities cited. The letter contained the following statement:

"In view of the fact that the case will likely be appealed by the losing side, in the event of your final success, you are doubtless aware that a considerable portion of our underwriters have failed to provide any funds with which to discharge their liabilities, and $500 at this time would doubtless be more than you would realize, even in the event of your success."

The circular furnished by the insurance underwriters, and which induced plaintiff to take out the policy, contained the following:

"The subscribers have deposited a large cash guaranty fund in the New York Security and Trust Company, which, in addition to the premium receipts, is available for the settlement of claims. In addition to this, the subscribers are each individually liable, to the full extent of his wealth, for every risk so made by them. These hundred men represent over $400,000,000, thus making insurance by them much stronger than by any company. * * * The security offered by the Guarantee & Accident Lloyds is unlimited liability. * * * In case of a vacancy occurring either through death or business embarrassment of a subscriber, his place is immediately filled by one from the waiting list."

The statement in the letter before quoted flatly contradicts these representations of the circular, and was admissible for that purpose. Bartlett v. Tarbox, 1 Abb. Dec. 120; Mount v. Bogert, Anth. N. P. 259; Marvin v. Richmond, 3 Denio, 58; Slingerland v. Norton, 58 Hun, 578, 12 N. Y. Supp. 647; applied, Manufacturing Co. v. Trowbridge, 68 Hun, 28, 22 N. Y. Supp. 674; Jones v. Sparks, 2 N. Y. St. Rep. 139; 9 Am. & Eng. Enc. Law, 353, 354. Smith v. Satterlee, 130 N. Y. 677, 29 N. E. 225, does not apply, because, as the court said, "the letter which was put in evidence did not contain an admission of the fact, but rather an offer of compromise." The justice having committed no error requiring reversal, and the verdict being supported by evidence, the judgment must be affirmed, with costs.